Citation Nr: 1542407 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 06-31 502 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Whether new and material evidence has been presented sufficient to reopen a claim for entitlement to service connection for valley fever (claimed as coccidiomycosis).

2. Entitlement to service connection for hernia.

3. Entitlement to service connection for a positive tuberculosis (TB) test.

4. Entitlement to service connection for sleep apnea.

5. Entitlement to service connection for toenail fungus.

6. Entitlement to a disability rating in excess of 40 percent for postoperative residuals of a right shoulder rotator cuff repair, as of October 19, 2005, to include on an extraschedular basis.

7. Entitlement to an initial disability evaluation in excess of 30 percent for asthma (to include claim for dyspnea).

8. Entitlement to an initial disability evaluation in excess of 20 percent for degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis (to include claims for degenerative disc disease, osteoarthritis, and degenerative arthritis).

9. Entitlement to an initial disability evaluation in excess of 10 percent for pseudofolliculitis barbae.

10. Entitlement to an initial disability evaluation in excess of 10 percent for radiculopathy, right lower extremity (to include claims for sciatica and right leg condition).

11. Entitlement to an initial disability evaluation in excess of 10 percent for radiculopathy, left lower extremity (to include claim for sciatica).

12. Entitlement to total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Michael R. Viterna, Attorney at Law


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

M. R. Harrigan Smith, Counsel

INTRODUCTION

The Veteran had active service from December 1967 to July 1991. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia.

A December 2002 rating decision granting service connection for a right shoulder disability and assigning a 20 percent disability rating. 

The Veteran was afforded a videoconference hearing before the undersigned Veterans Law Judge at the RO in Atlanta, Georgia in April 2009. A written transcript of this hearing has been prepared and incorporated into the evidence of record.

This claim was remanded by the Board in June 2009 for additional evidentiary development.
 
In November 2010, the Board issued a decision that: (1) denied a claim of entitlement to an initial disability evaluation in excess of 20 percent; (2) granted a claim of entitlement to a disability evaluation of 30 percent as of September 27, 2002; (3) denied a disability evaluation in excess of 40 percent as of October 19, 2005; and (4) denied a claim for TDIU. In April 2011, the parties submitted a Joint Motion for Partial Remand to the United States Court of Appeals for Veterans Claims (Court), requesting that all of the issues decided by the Board in November 2010 be affirmed, with the exception of the denial of entitlement to a disability evaluation in excess of 40 percent as of October 19, 2005. The Court granted this motion in April 2011, remanding the issue of entitlement to a disability evaluation in excess of 40 percent, as of October 19, 2005, back to the Board for further evidentiary development.
 
In a January 2013 rating decision, the RO determined that new and material evidence had not been presented sufficient to reopen a claim for entitlement to service connection for valley fever (claimed as coccidiomycosis), denied entitlement to service connection for hernia, positive TB test, sleep apnea, and toenail fungus, and granted entitlement to service connection for asthma at a 30 percent disability rating, for degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis at a 20 percent disability rating, for pseudofolliculitis barbae at a 10 percent disability rating, for radiculopathy of right lower extremity at a 10 percent disability rating, and for radiculopathy of left lower extremity at a 10 percent disability rating.

Since the issuance of the last supplemental statement of the case (SSOC) in November 2014, additional evidence has been received by the Board, including a June 2015 VA examination of the Veteran's right shoulder provided in connection with a claim for TDIU. The Board notes that the examination results are redundant of evidence already of record. In addition, a waiver of initial RO consideration was provided in August 2015. 38 C.F.R. § 20.1304 (2014). 

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for entitlement to a TDIU is part of an appeal for a higher rating claim when such claim is raised by the record. Here, the Board notes that, subsequent to the parties agreement in the JMR to affirm the Board's denial of TDIU, the Veteran submitted a claim for TDIU. As such, the Board finds that the record raises a claim for TDIU and has taken jurisdiction of the claim.

The issues of whether new and material evidence has been presented sufficient to reopen a claim for entitlement to service connection for valley fever (claimed as coccidiomycosis), entitlement to service connection for hernia, positive TB test, sleep apnea, toenail fungus, entitlement to an initial disability evaluation in excess of 30 percent for asthma, entitlement to an initial disability evaluation in excess of 20 percent for degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis, entitlement to an initial disability evaluation in excess of 10 percent for pseudofolliculitis barbae, entitlement to an initial disability evaluation in excess of 10 percent for radiculopathy, right lower extremity, entitlement to an initial disability evaluation in excess of 10 percent for radiculopathy, left lower extremity, and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The schedular rating criteria reasonably describe and contemplate the level of severity and symptomatology of the Veteran's right shoulder disability.

2. His right shoulder disability picture is not so exceptional or unusual as to render impractical the application of the regular schedular standards.


CONCLUSIONS OF LAW

The criteria are not met for an initial rating higher than 40 percent for postoperative residuals of a right shoulder rotator cuff repair, on an extra-schedular basis. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 3.321(b)(1) (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim, including the degree of disability and the effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield, 444 F.3d 1328; see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

The Veteran's claim arises from an appeal of the initial evaluation following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, and additional notice is not required as any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed under VCAA.

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

VA provided the Veteran the opportunity to have a hearing. The appellant testified before the undersigned Veterans Law Judge in April 2009. In Bryant v. Shinseki, 23 Vet. App. 488, the Court held that 38 C.F.R. 3.103(c)(2) requires that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the hearing, the Veterans Law Judge explained the evidence issues on appeal, and inquired about outstanding medical evidence and dates of treatment. Neither the Veteran nor his representative have asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2) or identified any prejudice in the conduct of the Board hearing. The Board finds that the Veterans Law Judge complied with the duties set forth in 38 C.F.R. 3.103(c)(2) extant at the time of the hearing.

A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Board initially remanded this case in June 2009, in order to provide the Veteran with an appropriate orthopedic VA examination to determine the severity of his right shoulder disability. The Veteran was provided with the examination in November 2009. The Veteran's claim was referred to the Director of Compensation and Pension Service for consideration of an extraschedular rating under 38 C.F.R. § 3.321, and an opinion was provided in June 2010. 

In a November 2010 decision, the Board denied entitlement to a disability rating in excess of 40 percent for postoperative residuals of a right shoulder rotator cuff repair, as of October 19, 2005, to include on an extraschedular basis. As noted in the introduction to this decision and as will be discussed further below, in an April 2011 JMR, the Board's denial of entitlement to a disability rating in excess of 40 percent for postoperative residuals of a right shoulder rotator cuff repair, as of October 19, 2005, was vacated and remanded.

In a February 2012 remand, the Board noted that additional evidence had been received in January 2012 from the Veteran's representative in support of his claim. Along with this evidence, the Veteran's representative submitted a 90-day response form in which it was requested that the case be returned to the Agency of Original Jurisdiction (AOJ) for review of this newly submitted evidence. As such, the Board remanded the issue in order for the AOJ to review and address this evidence and for the AOJ to consider the Veteran's claim on an extraschedular basis. 
 
The Veteran was provided with an additional VA examination in June 2015.
 
The Board finds that the VA examinations of record are adequate because, as shown below, they were based upon consideration of the Veteran's pertinent medical history, and because the reports describe the disability in detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)).

Post-service private medical records, Social Security Administration (SSA) records, VA medical records and examination reports have been associated with the claims file. The Board has reviewed these records to establish if any other medical evidence relevant to the Veteran's claim exists and has determined that all relevant medical evidence has been associated with the record.

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. The appeal is thus ready to be considered on the merits.

Entitlement to an increased disability evaluation for postoperative residuals of a right shoulder rotator cuff repair, as of October 19, 2005 on an extraschedular basis

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2014). Generally, the degrees of disability specified in the Rating Schedule are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 3.321.

The authority to assign extraschedular ratings has been specifically delegated to the Under Secretary for Benefits and the Director of the Compensation and Pension Service, and not the Board, in the first instance. Therefore, the correct course of action for the Board, where it finds that entitlement to an extraschedular evaluation may be present, is to raise the issue and remand it for the proper procedural actions outlined in 38 C.F.R. § 3.321(b)(1). Floyd v. Brown, 9 Vet. App. 88 (1996).

The Veteran contends that he is entitled to a disability rating in excess of 40 percent for his service-connected right shoulder disability as of October 19, 2005.
The Veteran was afforded a VA examination in October 2005. The examiner noted that the Veteran had not suffered any time lost from work as a result of this injury. Rather, this injury effected the Veteran's occupation by creating difficulty with lifting and carrying objects greater than 10 pounds, as well as problems with pushing and pulling.
 
Private treatment records from the University Orthopaedic Clinic demonstrate that the Veteran received treatment for his right shoulder in May 2006. The Veteran was seen with complaints of right shoulder pain, decreased range of motion, and lateral arm pain and weakness. The Veteran reported that his pain had gotten progressively worse since his last surgery of December 2004.
 
The record also contains a private MRI from February 2007. According to the report, the Veteran basically had a frozen shoulder with degeneration and erosion apparent on examination. Active range of motion was found to be forward flexion to 45 degrees, abduction to 30 degrees, and internal and external rotation to 30 degrees. The examiner concluded that while the Veteran's right upper extremity could not be used for any significant employment, he could perform adequately in any job where the use of his left upper extremity was required.
 
As already noted, the SSA concluded that the Veteran was under a disability, as defined in the Social Security Act, since December 2, 2004 in a November 2007 decision. The SSA concluded that the Veteran had severe impairment of the residual effects of torn rotator cuffs bilaterally. In making this decision, the SSA took into consideration the Veteran's age, education, work experience, and residual functional capacity.
 
The Veteran was afforded an additional VA examination in April 2008. The Veteran reported weakness, stiffness, lack of endurance, locking, fatigability and decreased motion, and loss of use of the upper extremity. The examiner noted that he did not have swelling, heat, redness, giving way or dislocation. The Veteran reported constant pain in his right shoulder. Range of motion was flexion and abduction to 150 degrees, and external and internal rotation to 90 degrees, with pain at 90 degrees on all movements. The examiner noted that joint function was additionally limited by pain after repetitive use, but was not additionally limited by fatigue, weakness, lack of endurance and incoordination. The examiner concluded that the right upper extremity had normal sensory and motor function. The examiner noted that the Veteran's daily activities were impacted in that he could not perform heavy lifting.
 
The record also contains a record from the Veteran's life insurance company dated March 2009. According to the record, the Veteran's subjective symptoms were severe bilateral shoulder pain with decreased motor strength on the right side. It was noted that the Veteran was frequently unable to lift or carry greater than 0 to 5 pounds. He was also noted to be unable to perform repetitive motions with both hands and unable to perform fine motor skills. It was concluded that the Veteran was permanently disabled.
 
Another VA examination was performed in November 2009. The examiner noted that the Veteran worked until September 2004 when he reportedly became disabled as a result of his right shoulder. Examination revealed flexion to 30 degrees, abduction to 30 degrees, and internal and external rotation to 30 degrees. The Veteran did not use braces or slings for the right shoulder. There was no evidence of ankylosis and the Veteran had no additional loss of motion due to the pain with repeated movements. He did not have weakness, instability, or incoordination. A neurological examination revealed full power in all muscle groups with no loss of sensation. His right upper extremity was noted to be weaker due to pain, however. X-rays revealed a normal glenohumeral joint, a normal acromioclavicular joint, and a bone anchor in the humeral head. The examiner diagnosed the Veteran with a right rotator cuff tear that resulted in severe pain in the shoulder. The examiner noted that the Veteran's severe pain seemed to be preventing him from carrying out a job. The examiner described the Veteran's disability as severe.
 
In February 2010, the Rating Operations Manager (ROM) at the AMC submitted a request for an extraschedular evaluation under the provisions of 38 C.F.R. § 3.321(b) (or 4.16(b)) to the Director of C&P. The ROM noted that the Veteran had retired from the Air Force in 1991 with 24 years of honorable service. His MOS was in aircraft maintenance and repair. After service, the Veteran was employed as a mechanic with a private firm in Georgia. This post-service employment was terminated by his employer in 2005 after expiration of a one-year period of nonpaid convalescent leave. The ROM noted that, upon review of the file, the Rating Board found that the condition on appeal caused an exceptional or unusual disability picture and marked interference with employment. 

In June 2010, the Director of the Compensation and Pension Service (Director) provided an opinion regarding extraschedular consideration. It was noted that the Veteran, born July 4, 1948, had honorable active military service in the United States Air Force from December 17, 1967 to June 30, 1991. The Director noted that the Veteran was rated at 40 percent for his right shoulder disability, as of October 19, 2005, and that this was the maximum schedular evaluation provided under Diagnostic Codes 5304-5201. Social Security disability benefits were initially denied but were granted on appeal by an Administrative Law Judge in November 2007. The Director noted that the Administrative Law Judge made the following findings: that the Veteran was of advanced age on the established disability onset date on December 2, 2004, that his job skills do not transfer to other occupations within the residual functional capacity defined above, and that considering the Veteran's age, education, work experience, and residual functional capacity there were no jobs that exist in significant numbers in the national economy that the claimant could perform. The Director found that the Veteran's service-connected right shoulder disability did not present such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards, and that an extraschedular evaluation under 38 C.F.R. § 3.321(b) was not warranted for the service-connected right shoulder disability. Further, the Director noted that they did not find the Veteran to be entitled to a total rating based on unemployability due to service-connected disability on an extraschedular basis under 38 C.F.R. § 4.16 (b). 

The Veteran was afforded a VA examination in June 2015. The Veteran reported that he had constant pain in right shoulder, was unable to lift right shoulder or arm above his head, and was unable to lift more than five pounds. Examination revealed flexion to 40 degrees, abduction to 40 degrees, and internal and external rotation to 50 degrees. The examiner found that functional loss was due to pain, and that the Veteran had pain on flexion, extension, and abduction. There was no additional loss of range of motion on repetitive movement. The examiner noted that pain, fatigue, weakness, lack of endurance would cause functional loss with repeated use over a period of time and during flare-ups. Additional factors causing disability were less movement than normal, and weakened movement. Strength was 4/5 in flexion and abduction. There was no muscle atrophy and no ankylosis. The Veteran's right shoulder had instability, but no recurrent dislocation. There was no evidence of a clavicle, scapula, acromioclavicular joint or sternoclavicular joint condition. The Veteran did not have acromioclavicular joint condition or any other impairment of the clavicle or scapula. The Veteran did not have loss of head (flail shoulder), nonunion (false flail shoulder), or fibrous union of the humerus. The Veteran did not have malunion of the humerus with moderate or marked deformity. The examiner noted that his right shoulder disability did not impact his ability to perform any type of occupational task (such as standing, walking, lifting, sitting, etc.) 

During his April 2009 hearing, the Veteran testified to suffering from extremely limited motion, numbness and weakness. 

The Veteran has been afforded a 40 percent disability rating under Diagnostic Code 5201 as of October 19, 2005. This is the highest disability rating available under this Diagnostic Code. A 50 percent disability rating is warranted when there is evidence of ankylosis of the major shoulder. 38 C.F.R. § 4.71a, Diagnostic Code 5200. However, the evidence of record has consistently demonstrated that the Veteran does not suffer from ankylosis, and as such, Diagnostic Code 5200 is not applicable. A higher disability rating on a schedular basis is, therefore, not warranted.

Consideration of referral for an extraschedular rating requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The Court stated that the RO or the Board must first determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id.
 
If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.
 
VA's General Counsel has stated that consideration of an extra-schedular rating under 3.321(b)(1) is only warranted where there is evidence that the disability picture presented by the Veteran would, in that average case, produce impairment of earning capacity beyond that reflected in the rating schedule or where evidence shows that the Veteran's service-connected disability affects employability in ways not contemplated by the rating schedule. See VAOPGCPREC 6-96 (Aug. 16, 1996).
 
The record of evidence contains an opinion by the Director of Compensation and Pension that the Veteran's right shoulder disability does not meet the criteria for an extraschedular rating. For the following reasons, the Board agrees with this opinion.

The Board finds that the first Thun element is not satisfied here. The Veteran's service-connected right shoulder disability is manifested by fatigue, weakness, lack of endurance, limitation of motion, and pain. These symptoms, and their resulting impairment, are contemplated by the rating schedule. The Veteran's right shoulder disability is rated based upon limitation of motion of the arm. See 38 C.F.R. § 4.71a, Diagnostic Code 5201. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell v. Shinseki, 25 Vet.App. 32, 37 (2011). For disabilities of the joints in particular, such as the shoulder, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet.App. at 37. In summary, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss.

Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. There is nothing exceptional or unusual about the Veteran's right shoulder disability because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet.App. at 115.

The Board recognizes that the ROM concluded that the Veteran's service-connected postoperative residuals of a right shoulder rotator cuff repair presented an exceptional or unusual disability picture, sufficient to warrant referral to the Director of Compensation and Pension for consideration of an extraschedular rating. However, the Board is cognizant that in Anderson, the Court stated that the Board has jurisdiction to review whether the decision not to award an extraschedular rating was appropriate under all three elements set forth in Thun. Anderson v. Shinseki, 22 Vet. App. 423, 427 (2009). Therefore, the Board is not bound by the findings of the RO in this regard. 

In the JMR, the parties agreed that, in the November 2010 decision, the Board erred when it did not give adequate reasons or bases as to whether Appellant was entitled to an extraschedular rating pursuant to section 3.321(b) based exclusively on his service-connected right shoulder disability. Specifically, it was noted that, in the paragraph that the Board discussed § 3.321(b), the rationale included consideration of non-service connected disabilities and advanced age-factors that are irrelevant for determining whether the Veteran has an exceptional disability picture sufficient to warrant an extraschedular rating under § 3.321(b). 

However, such factors have not been considered herein. Again, the Board concludes that disability picture resulting from the Veteran's service-connected right shoulder symptoms is adequately contemplated by the rating criteria for musculoskeletal disabilities.

In the JMR, the parties also found that the Board did not provide adequate reasons or bases as to why they deferred to the C&P Director's decision, given that the Court has found that the Board is not bound by the C&P findings but must make its own assessment. 

While the Board has acknowledged the decision by the Director of C&P, it has reached its own conclusion in this decision, based on the evidence of record.

The parties additionally agreed that the Board also erred by not adequately explaining how Diagnostic Code 5201 contemplated occupational impairment in light of Veteran's disability picture for his service-connected right shoulder. The parties noted that, in its November 2010 decision, Board referred to occupational impairment as a result of his service-connected right shoulder disability, but found that his symptoms had already been compensated for in that the Veteran had been granted the highest disability rating available under Diagnostic Code 5201. The parties to the JMR noted that Diagnostic Code 5201 only contemplated limitation of motion for the arms and shoulders and pain, but not occupational impairment. The JMR also included references to opinions submitted by the Veteran with regard to the effects of his right shoulder disability on his employment. 

While the rating criteria contemplated under Diagnostic Code 5201 does not specifically address occupational impairment per se, the criteria for rating disabilities are generally considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. The Board notes that, in particular, the rating criteria for rating disabilities of the joints contemplate a rather broad spectrum of symptoms and disability, such that the criteria adequately consider the effects of the Veteran's right shoulder disability. 

Finally, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.
 
Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable. The Veteran's claim of entitlement to a disability rating in excess of 40 percent for a right shoulder disability on an extraschedular basis, as of October 19, 2005, must be denied.


ORDER

A disability rating in excess of 40 percent for postoperative residuals of a right shoulder rotator cuff repair, as of October 19, 2005, is denied.


REMAND

As noted in the introduction to this case, the Veteran was denied entitlement to TDIU in a November 2010 Board decision. That portion of the Board's decision was affirmed in the April 2011 JMR. However, since that time, the Veteran has submitted a claim for TDIU and, under the holding in Rice, the Board has taken jurisdiction over the claim.

The Veteran has contended that he is unable to work due to his service-connected disabilities. In order to establish a total rating based upon individual unemployability due to service-connected disabilities, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is 'whether the Veteran's service connected disabilities alone are of sufficient severity to produce unemployability.' Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993).

To satisfy the criteria for schedular consideration of entitlement to a TDIU, if unemployability is the result of only one service-connected disability, this disability must be ratable at 60 percent or more. See 38 C.F.R. § 4.16(a). If it is the result of two or more service-connected disabilities, at least one must be ratable at 40 percent or more, with the others sufficient to bring the combined rating to 70 percent or more. Id. Disabilities of one or both upper extremities or one or both lower extremities, including the bilateral factor, disabilities resulting from a common etiology or a single accident, disabilities affecting a single body system such as orthopedic disabilities, multiple injuries incurred in action, or multiple disabilities incurred as a prisoner of war will be considered as one disability for purposes of determining whether the Veteran satisfies these threshold minimum rating requirements. Id.

In this case, prior to October 6, 2011, the Veteran was service-connected for postoperative residuals of a right shoulder rotator cuff repair at a 40 percent disability rating, anterior cruciate ligament tear of the left knee at a 10 percent disability rating, a surgical scar on the right shoulder, associated with postoperative right shoulder rotator cuff tear at a 10 percent disability rating, a scar on the left knee associated with anterior cruciate ligament tear at a noncompensable disability rating, and residuals, laceration left forehead at a noncompensable disability rating, for a combined rating of 50 percent. As such, prior to October 6, 2011, the Veteran did not meet the criteria for a TDIU under 4.16(a). 

However, during the pendency of this appeal, the Veteran was service-connected for several additional disabilities, effective October 6, 2011. These include asthma at a 30 percent disability rating, degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis at a 20 percent disability rating, pseudofolliculitis barbae at a 10 percent disability rating, and radiculopathy of the right and left lower extremities associated with degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis at 10 percent disability ratings each. As of October 6, 2011, the Veteran had a combined disability rating of 80 percent. As such, the Veteran met the criteria for a TDIU rating under 38 C.F.R. § 4.16(a).

The Veteran was provided with VA examinations in June 2013 to determine whether his service-connected disabilities cause him to be unemployable. The examiner found that the Veteran's service-connected asthma impacted his ability to work, and that the effect of asthma was fatigue, dyspnea, and shortness of breath with physical exertion. The examiner additionally found that the Veteran's back impacted his ability to work, and that the impact of the thoracolumbar spine disability was back pain, stiffness, limited range of motion, difficulty with heavy lifting, bending, prolong sitting, standing, walking or climbing.

The Veteran was provided with VA examinations in June 2015 to determine whether his service-connected disabilities cause him to be unemployable. The examiner found that the Veteran's right shoulder, left knee and scars did not impact his ability to perform any type of occupational task, such as standing, walking, lifting, sitting, etc.

It is unclear from these opinions as to whether the Veteran's currently service-connected disabilities render him unemployable. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that VA's duty to assist does not require obtaining a single medical opinion regarding the combined impact of all service-connected disabilities in TDIU cases. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir 2013). Following and taking note of the Federal Circuit's decision in Geib, the Court stated in Floore v. Shinseki, 26 Vet. App. 376, 381 (2013), that the need for a combined-effects medical examination report or opinion with regard to multiple-disability TDIU entitlement decisions is to be determined on a case-by-case basis and depends on the evidence of record at the time of decision by the RO or the Board. The Court emphasized that this was not to say that a combined-effects medical examination report or opinion likely would not be helpful to the proper adjudication of entitlement to TDIU for a Veteran with multiple service-connected disabilities but such an examination is not required per se as a matter of statute, regulation, or policy. 

Here, the Board finds that an examination and opinion as to whether the Veteran's service-connected disabilities, together, make it impossible for him to obtain or maintain a substantially gainful occupation is necessary to determine whether he is entitled to TDIU. As such, on remand, the Veteran should be provided with a VA examination to obtain as opinion in this regard.

In a January 2013 rating decision, the RO determined that new and material evidence had not been presented sufficient to reopen a claim for entitlement to service connection for valley fever (claimed as coccidiomycosis), denied entitlement to service connection for hernia, positive TB test, sleep apnea, and toenail fungus, and granted entitlement to service connection for asthma (to include claim for dyspnea) at a 30 percent disability rating, for degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis (to include claims for degenerative disc disease, osteoarthritis, and degenerative arthritis) at a 20 percent disability rating, for pseudofolliculitis barbae at a 10 percent disability rating, for radiculopathy of right lower extremity (to include claims for sciatica and right leg condition) at a 10 percent disability rating, and for radiculopathy of left lower extremity (to include claim for sciatica) at a 10 percent disability rating.
In April 2014, the Veteran filed a notice of disagreement with these issues. The RO has not issued a statement of the case with regard to these issues; as such, they must be remanded for such a purpose. See Manlincon v. West, 12 Vet. App. 238, 240 (1999).

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with a statement of the case as to the issues of whether new and material evidence has been presented sufficient to reopen a claim for entitlement to service connection for valley fever (claimed as coccidiomycosis), entitlement to service connection for hernia, a positive TB test, sleep apnea, and toenail fungus, and entitlement to an initial disability evaluation in excess of 30 percent for asthma (to include claim for dyspnea), an initial disability evaluation in excess of 20 percent for degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis (to include claims for degenerative disc disease, osteoarthritis, and degenerative arthritis), an initial disability evaluation in excess of 10 percent for pseudofolliculitis barbae, an initial disability evaluation in excess of 10 percent for radiculopathy, right lower extremity (to include claims for sciatica and right leg condition), and an initial disability evaluation in excess of 10 percent for radiculopathy, left lower extremity (to include claim for sciatica). Advise the Veteran that a substantive appeal has not been received concerning these issues, and of the requirements for submitting an adequate and timely substantive appeal, as provided in 38 C.F.R. § 20.200 (2014). Thereafter, the case should be returned to the Board only if a timely substantive appeal is filed, and subject to current appellate procedures. 

2. Schedule the Veteran for a VA examination to determine whether his service-connected disabilities prevent him from securing and following substantially gainful employment for which his education and occupational experience would otherwise qualify him. All indicated tests and studies should be conducted.

The claims file (including paper records and/or records in the Virtual VA and VBMS systems) and this remand must be reviewed by the examiner; consideration of such should be reflected in the completed examination report or in an addendum.

The examiner should opine as to whether it is at least as likely as not (50 percent probability or more) that the Veteran's service-connected disabilities (postoperative residuals of a right shoulder rotator cuff repair, anterior cruciate ligament tear of the left knee, a surgical scar on the right shoulder associated with postoperative right shoulder rotator cuff tear, a scar on the left knee associated with anterior cruciate ligament tear, residuals of a laceration of the left forehead, asthma, degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis, pseudofolliculitis barbae, and radiculopathy of the right and left lower extremities associated with degenerative joint disease of the thoracolumbar spine with intervertebral disc syndrome and scoliosis) would, collectively, prevent him from securing or following substantially gainful employment for which his education and occupational experience would otherwise qualify him.

The examiner must provide a rationale for each opinion. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered. 

The examiner is advised that the Veteran is competent to report his symptoms and history; and such reports must be specifically acknowledged and considered in formulating any opinions.

If the examiner rejects the Veteran's reports, the examiner should provide a reason for doing so.

3. If any benefit on appeal remains denied, the AOJ should issue a supplemental statement of the case. Thereafter, the case should be returned to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
J.A. MARKEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs